[No. 14463.   Department Two. — March 4, 1892.]

## RICHARD KIRMAN ET AL., RESPONDENTS, *v.* N. B. HUNNEWILL ET AL., APPELLANTS.

APPEAL — ORDER DENYING NEW TRIAL — SUPPORT OF JUDGMENT — SUFFICIENCY OF FINDINGS. — The insufficiency of the findings to support the judgment cannot be considered on an appeal from an order denying a new trial, but only on an appeal from the judgment.

ID. — CONTRADICTORY FINDINGS — SPECIAL AND GENERAL FINDINGS. — If a court, upon an issue essential to the decision of the case, should make two findings directly contradictory to each other, the point might possibly be made on an appeal from an order denying a motion for a new trial that there was no finding upon such issue, and therefore a mistrial; but where the findings do not appear to be contradictory, a contention that special findings should prevail over general findings, so as to entitle appellants to judgment, amounts to a contention that the findings do not support the judgment, and cannot prevail upon such an appeal.

WATER RIGHT — APPROPRIATION FOR MINING PURPOSES — ABANDONMENT — RIPARIAN RIGHTS — DIVERSION OF STREAM. — After a ditch by which the water of a creek was appropriated for mining purposes has fallen into disuse and has been abandoned, the water right is destroyed by the abandonment, and where, after such abandonment, the water of the creek has continuously flowed over lands belonging to a riparian owner, and been used by him for irrigation and for domestic and general farming purposes, for many years, no person claiming under the appropriators can revive the old ditch and water right so as to divert the water beyond the water-shed of the creek, to the injury of the riparian owner.

APPEAL from an order of the Superior Court of Mono County denying a new trial.

The facts are stated in the opinion of the court.

*William O. Parker, C. A. Schuman, James E. Goodall,* and *Fox, Kellogg & King,* for Appellants.

Wherever a discrepancy exists between a general and and a special finding, the more specific findings of particular facts must control. (*Hidden* v. *Jordan,* 28 Cal. 301; *Warder* v. *Enslen,* 73 Cal. 294.) When a general finding of fact is drawn as conclusion of fact from special findings of fact which precede it, and which are inconsistent with the general conclusion of fact, the special findings will control the general finding, and a judgment supported by the general finding, but not by the special findings, will be reversed upon an appeal, as not being supported by the findings. (*People* v. *Reed,* 81 Cal. 76; 15 Am. St. Rep. 22; *Geer* v. *Sibley,* 83 Cal. 1.) When the probative facts are found, a conclusion of law or of fact drawn from the probative facts so found, but unsupported by them, will be reversed. (*Overacre* v. *Blake,* 82 Cal. 83.) The work by which the diversion and appropriation of the water was made was begun and completed in the year 1860, and continuously maintained until the year 1887, when the dam was destroyed by plaintiffs. The rights of defendants, and their predecessors and grantors, relate to the time of the first act in the process of such diversion and appropriation. (*Kelly* v. *Natoma Water Co.,* 6 Cal. 108; *Maeris* v. *Bicknell,* 7 Cal. 262; 68 Am. Dec. 257; *Kimball* v. *Gearhart,* 12 Cal. 28; *Weaver* v. *Eureka Lake Co.,* 15 Cal. 272; *Nevada etc. Canal Co.* v. *Kidd,* 37 Cal. 310; *Osgood* v. *El Dorado etc. Co.,* 56 Cal. 571.) Defendants, being first in time, are first in right. (Civ. Code, sec. 1414.) The rights of defendants, resting, as they do, upon a ditch actually completed and an appropriation actually made before the acquirement by plaintiffs of any interest in any of the lands now claimed by them, which were then government or public lands, are fully protected against the claims of plaintiffs as riparian proprietors or subsequent appropriators, both by the laws of this state and by the act of Congress of July, 1866. (*De Necochea* v. *Curtis,* 80 Cal.

397; *Osgood* v. *El Dorado etc. Co.*, 56 Cal. 574.)   The claims
of the plaintiffs are subject and subordinate to the claims
of defendants, under the prior appropriation actually
made by their predecessors and grantors.   (*South Yuba
Water Co.* v. *Rosa*, 80 Cal. 333.)   Even if the plaintiffs
had been riparian proprietors at the date of the appro-
priation, under the facts found their rights would have
been extinguished, the appropriation and user having
been actual, uninterrupted, adverse, for a useful purpose,
under claim of right, and continued for the period of
the statute of limitations five times over.   (*Alta Land
and Water Co.* v. *Hancock*, 85 Cal. 219; 20 Am. St. Rep.
217.)   The acts of the predecessors and grantors of de-
fendants gave an absolute title to the water as against
subsequent claims.   (*Kimball* v. *Gearhart*, 12 Cal. 28;
Civ. Code, sec. 1414.)   And it is fully protected by the
statute of limitations, whether there was compliance with
the requirements of the code in the matter of notices or
not.   (*Cox* v. *Clough*, 70 Cal. 345; *Coonradt* v. *Hill*, 79
Cal. 587; *Alta Land and Water Co.* v. *Hancock*, 85 Cal.
219; 20 Am. St. Rep. 217.)   The right of these defend-
ants in these waters became fixed by the uninterrupted
adverse use for the period of five years.   (*Crandall* v.
*Woods*, 8 Cal. 136; *Yankee Jim's U. W. Co.* v. *Crary*, 25
Cal. 504; 85 Am. Dec. 145; *American Co.* v. *Bradford*, 27
Cal. 361; *Davis* v. *Gale*, 32 Cal. 27; 91 Am. Dec. 554.)
And having once acquired the right, they could after-
wards change the place of use of the water, or even
change the use to which it was applied, without losing
their priority of right.   (Civ. Code, sec. 1412, and cases
cited in Deering's ed.; *Davis* v. *Gale*, 32 Cal. 27; 91 Am.
Dec. 554; *Maeris* v. *Bicknell*, 7 Cal. 262; 68 Am. Dec.
257; *McDonald* v. *Bear River etc. Co.*, 13 Cal. 221.)   The
right to the use of this water is one which will be pro-
tected as property, and over which the owner of the
ditch has exclusive and absolute power and control.
(*Kidd* v. *Laird*, 15 Cal. 163; 76 Am. Dec. 472; *Gregory*
v. *Nelson*, 41 Cal. 286; *Lux* v. *Haggin*, 69 Cal. 322.)   As
the plaintiffs' patents were acquired subsequent to the

passage of the act of Congress of July, 1866, they took such patents subject to the provisions of that act, and, by the provisions of that act, the rights of those prior appropriators in the waters were confirmed. (See *Lux* v. *Haggin*, 69 Cal. 345; *Broder* v. *Water Co.*, 101 U. S. 274.) There has been no abandonment of the use of this water in fact, nor any cessation of its use during the mining season, from the inception of its use in 1860 down to the time of bringing this action, and neither the change in the place of its use, nor the abandonment of the mining claims in which it was first used (if there had been such abandonment), would operate as an abandonment of the water right. (*Maeris* v. *Bicknell*, 7 Cal. 262; 68 Am. Dec. 257; *McDonald* v. *Bear River etc. Co.*, 13 Cal. 221; *Davis* v. *Gale*, 32 Cal. 27; 91 Am. Dec. 554.) The court erred in its rulings upon each and all of the papers and records offered by the defendants tending to show a paper or record title to the ditch No. 1, and the water rights appurtenant thereto. (See *Jackson* v. *Feather River Water Co.*, 14 Cal. 22; *Draper* v. *Douglass*, 23 Cal. 348; *Crary* v. *Campbell*, 24 Cal. 634; *St. John* v. *Kidd*, 26 Cal. 264; *Cochran* v. *O'Keefe*, 34 Cal. 554.)

*Richard S. Miner*, for Respondents.

The findings amply support the decision and judgment; and the decision and judgment are not against, but follow, the findings. The findings must be read and construed together, and should be reconciled if it can be reasonably done, and be so construed *ut res magis valeat quam pereat*. (*Millard* v. *Hathaway*, 27 Cal. 140, 141; *Kimball* v. *Lohmas*, 31 Cal. 154; *Harris* v. *Harris*, 64 Cal. 110; *Water Co.* v. *Richardson*, 72 Cal. 598; *Polack* v. *McGrath*, 38 Cal. 669; *Mott* v. *Ewing*, 90 Cal. 231.) Facts need not be stated in a finding in the language of the pleading. (*Clary* v. *Hazlitt*, 67 Cal. 286.) Where probative facts are found, and the court can declare that the ultimate facts necessarily result from the facts found, the finding is sufficient. (*Smith* v. *Acker*, 52 Cal. 219; *Water Co.* v. *Richardson*, 72 Cal. 601; *Mott* v. *Ewing*,

90 Cal. 231.) The judgment should not be reversed
upon the ground that a conclusion of ultimate fact found
by the court, material to the judgment, is inconsistent
with the probative facts as specifically found, unless it
appears that the ultimate fact is entirely based upon
the probative facts, and not in whole or in part upon
the facts proved, but not found, and further, that said
probative facts are of sufficient materiality to affect the
judgment. (*Wood* v. *Pendola,* 78 Cal. 289; 12 Am. St.
Rep. 53; *Dedmon* v. *Moffitt,* 89 Cal. 211; *Mott* v. *Ewing,* 90
Cal. 231; *Geer* v. *Sibley,* 83 Cal. 1; *People* v. *Reed,* 81 Cal.
76; 15 Am. St. Rep. 22.) The court did not err in its
rulings upon the papers and records offered by the de-
fendants. The association which built the ditch was
unincorporated, and therefore could not buy, hold, or
sell real estate in its own name like a corporation, and
the interest of its members in any property claimed by
it is like that possessed by tenants in common. Neither
could it sue or be sued. (See Stevick on Unincorpo-
rated Associations, secs. 34–38; citing 5 Johns. Ch. 573;
*Paul* v. *Keystone Lodge,* 3 Week. Not. Cas. 408.) The judg-
ment in *Shaw* v. *United Water Ditch Co.,* was properly
ruled out upon plaintiffs' objections. (Stevick on Unin-
corporated Corporations, secs. 34–38; *Paul* v. *Keystone
Lodge,* 3 Week. Not. Cas. 408; *Young* v. *Rosenbaum,* 39 Cal.
646; *Mason* v. *Wolff,* 40 Cal. 246; *Harper* v. *Rowe,* 53 Cal.
234.) The deed from the constable was properly ruled
out. No evidence was offered of the judgment or execu-
tion in case of *Phelps* v. *United Water Ditch Co.* (*Wise-
man* v. *McNulty,* 25 Cal. 230; *Quirk* v. *Falk,* 47 Cal. 453;
*Vassault* v. *Austin,* 32 Cal. 597; *Petersen* v. *Weisben,* 75 Cal.
174; *Schuyler* v. *Broughton,* 65 Cal. 252; *Archbishop of
San Francisco* v. *Shipman,* 69 Cal. 586; *Los Angeles Bank*
v. *Raynor,* 61 Cal. 145.) As the evidence and findings
conclusively establish the facts that ditch No. 1 from
point "Outlet" eastward was abandoned in 1864, that
from 1864 to 1886 the water of the West Fork of Dog-
town ran through the lands of plaintiffs, and was used
upon said lands, and that plaintiffs and their grantors

acquired rights in the same as riparian owners, appropriators, and by prescription, and have claimed and exercised said rights over twenty-one years, the judgment should be upheld and plaintiffs' rights preserved. (*Smith* v. *Logan*, 1 West Coast Rep. 391; *Dow* v. *Hammond*, 1 West Coast Rep. 357; *Ortman* v. *Dixon*, 13 Cal. 33; *Kidd* v. *Laird*, 15 Cal. 180; 76 Am. Dec. 472; *Junkans* v. *Bergin*, 67 Cal. 267; *Higgins* v. *Barker*, 42 Cal. 234; *Nevada Water Co.* v. *Powell*, 34 Cal. 109; 91 Am. Dec. 685; *McKinney* v. *Smith*, 21 Cal. 374; *Davis* v. *Gale*, 32 Cal. 26; 91 Am. Dec. 554.) The taking up of the waters of a stream for a special limited purpose is an appropriation of only so much of the water as is necessary for that particular purpose. The surplus may be the subject of a new appropriation, which will give to the second locator a paramount ~ht to the use of all the waters of the stream not required fɔ. `e specific purpose of the first appropriation; and the extenʋ f the first appropriator's right depends upon the nature anᵈ uses of his appropriation, and should he suffer a portion of the water, or the body of it, after his user of it, to go on down its accustomed course, persons below may appropriate this residuum so as to make it a vested right. (*Ortman* v. *Dixon*, 13 Cal. 34; *Maeris* v. *Bicknell*, 7 Cal. 261; 68 Am. Dec. 257; *McKinney* v. *Smith*, 21 Cal. 374; *Smith* v. *O'Hara*, 43 Cal. 371; *Nevada Water Co.* v. *Powell*, 34 Cal. 109; 91 Am. Dec. 685.) Treating plaintiffs as subsequent appropriators continuously from 1864 to 1886, and certainly for more than five years immediately preceding the year 1886, then they have affirmative rights which should be protected and held good as against the defendants. Plaintiffs have vested rights in said water, settled and unquestioned for twenty-two years. (*Lobdell* v. *Simpson*, 2 Nev. 274; 90 Am. Dec. 537; *Procter* v. *Jennings*, 6 Nev. 83; 3 Am. Rep. 240; Pomeroy on Riparian Rights, secs. 82–86; citing *Smith* v. *O'Hara*, 43 Cal. 371; *Barnes* v. *Sabron*, 10 Nev. 217.) When, in a contest concerning priority, a party claiming a right to water by appropriation fails to connect himself in interest with those who first appropriated and

used the waters of a stream, his own appropriation of the water must be treated as the inception of his right; or in other words, his right of appropriation must be dated from the time when he himself began to use the water; he cannot link his own use onto that of the former occupants, and thus claim to be a successor to their prior rights. Their prior appropriation is virtually abandoned. (Pomeroy on Riparian Rights, secs. 57, 58, 89, 90; citing *Chiatovich* v. *Davis*, 17 Nev. 133; *Smith* v. *O'Hara*, 43 Cal. 371; *Barkley* v. *Tieleke*, 2 Mont. 59.) The record shows that the water was taken to Monoville in 1860-62 for the purpose only of selling it to the miners; and Hunnewill, after an interval of twenty-two years, cannot successfully, as against plaintiffs, claim the right to take said water across the divide entirely away from its natural channel, and wholly deprive them of the use, basing his title upon that of the association which took it to Monoville for a special purpose only. (*Davis* v. *Gale*, 32 Cal. 26; 91 Am. Dec. 554; Pomeroy on Riparian Rights, secs. 89, 90.) The defendants cannot change the point of diversion and place of use, if such change would injuriously affect the affirmative and vested rights acquired by the plaintiffs. (*Fuller* v. *Swan River Placer Min. Co.*, 19 Pac. Rep. 836; *Maeris* v. *Bicknell*, 7 Cal. 262; 68 Am. Dec. 257; *Kidd* v. *Laird*, 15 Cal. 162; 76 Am. Dec. 472; *Mining Co.* v. *Morgan*, 19 Cal. 609; *Water Co.* v. *Powell*, 34 Cal. 109; 91 Am. Dec. 685; *Junkans* v. *Bergin*, 67 Cal. 267; *Davis* v. *Gale*, 32 Cal. 27; 91 Am. Dec. 554.) Sale of ditch and water right must be by deed. An attempted transfer by means of an imperfect deed or instrument of conveyance simply amounts to an abandonment, and the would-be grantee dates the inception of his right from the time of his own appropriation and use of the water. (Pomeroy on Riparian Rights, secs. 57-59, 89.) One who stands passively by and allows another to open out fields and irrigate them with water for sixteen years, under the belief that he has a vested right to an equal user thereof, is estopped from subsequently denying this right. (*Dick-*

*erson* v. *Colgrove,* 100 U. S. 578; *Kirk* v. *Hamilton,* 102 U. S. 68; *Smith* v. *Hamilton,* 20 Mich. 433; 4 Am. Rep. 398; *Parke* v. *Kilham,* 8 Cal. 78; 68 Am. Dec. 310; *Joyce* v. *Nivens,* 26 Mich. 332; *Niven* v. *Belknap,* 2 Johns. 573; *Gregg* v. *Von Phul,* 1 Wall. 274; *Water Co.* v. *Richardson,* 72 Cal. 601.)

McFARLAND, J. — This action was brought to enjoin defendants from diverting the waters of a natural watercourse, and to recover damages for past diversion thereof. Judgment was rendered in favor of plaintiffs, and defendants, having made a motion for a new trial, and the court having denied the same, appeal from the order denying said motion. There is no appeal from the judgment.

1. Nearly the whole force of the arguments of appellants' counsel is directed to the point that the findings do not support the judgment. In their final brief, after having referred to *Dedmon* v. *Moffitt,* 89 Cal. 211, they say: "We are not asking here, as was asked there, to reverse the judgment for want of a particular finding, but our contention is, that this judgment should be reversed because it is not supported by the findings made." But it is definitely settled that the insufficiency of the findings to support the judgment cannot be considered on an appeal from an order denying a new trial. That point can be raised only on an appeal from the judgment. (*Brison* v. *Brison,* 90 Cal. 323; *In re Doyle,* 73 Cal. 564; *Martin* v. *Matfield,* 49 Cal. 45.) Counsel for appellants say, among other things, that certain general findings are inconsistent with certain special findings; that therefore the special findings should prevail; and that, upon the special findings, the judgment should have been for appellants. But that is nothing more than saying that the findings do not support the judgment, — a position which, as we have seen, cannot be taken on this appeal. If a court, upon an issue essential to the decision of the case, should make two findings directly contradictory of each other, the point might possibly be made, on an appeal from an

order denying a motion for a new trial, that there was no finding upon such essential issue, and therefore a mistrial. Such point, however, is not made here; and moreover, we find in this case no such contradictory findings.

2. There is some contention, apparently not much relied on, that the evidence is insufficient to support some of the findings. There are about six hundred pages of evidence in the printed transcript. Most of it consists of the testimony of witnesses by question and answer, apparently taken bodily from the reporter's notes. It could hardly be expected that this court would critically examine this mass of matter, which ought to have been condensed to one sixth of its present volume. We have looked through it, however, and have seen no reason for disturbing the findings for want of support in the evidence.

3. It is contended by appellants that the court erred in sustaining objections to certain deeds, bills of sale, and records offered by appellants as tending to prove paper title in them to a certain ditch and water right claimed by them.

It appears from the findings that as early as 1862, plaintiffs' grantors settled upon lands through which a natural watercourse runs, called Dogtown Creek; and since then plaintiffs and their grantors have continuously used the water of said stream to irrigate said lands, and for general farming and domestic purposes. The said lands were then public lands, and they afterwards commenced to obtain title thereto. They first perfected their title to part of the land, through a United States patent, in 1871, and gradually, through the next few years, perfected their title to the whole. It is not necessary to accurately determine what rights plaintiffs had to the use of the water during the period when they were taking steps to acquire the title of the government, because after they received the first patent in 1871 they had all the rights of riparian proprietors, and the decision of the case would be the same

if their rights are held as commencing only from that date.

Dogtown Creek runs in a northerly direction to and over plaintiffs' land, and has a fork or tributary called West Fork of Dogtown Creek, and also another tributary, farther to the east, called Virginia Creek, both of which empty into the main creek above the land of plaintiffs. In the fall of 1860, an association of miners working mines at Monoville, which is east of and beyond the water-shed of said Dogtown Creek and its said tributaries, built a ditch from said West Fork across said Virginia Creek to said Monoville, and thus conveyed all the water of said West Fork, except about forty inches, to said Monoville, for the purpose of working mines at said latter place. This unincorporated, and apparently unorganized, association, composed of about two hundred persons, was called, as the findings show, the " New Ditch Company "; but as early as 1862 it began to disband, and the members of it began to scatter and go to other localities; but " various persons and strangers " continued to use the ditch until some time in 1864. The ditch then fell into disuse and was abandoned, except a small part of it running from said West Fork of Dogtown Creek to a point called " Outlet," between said West Fork and said Virginia Creek; the rest of it from 1864 to 1886 — more than twenty years — " was absolutely abandoned, and no person or persons whatever exercised any ownership over or used the same for any purpose whatever." From 1864 to 1886 the water either ran directly down the said West Fork and upon plaintiffs' land, or it was carried during the mining seasons through the remnant of the ditch to said " Outlet," and was used " by various persons " to mine some gravel diggings in the neighborhood, from whence it ran down to and upon plaintiffs' land. It does not appear that this use of the water at said gravel diggings impaired its value to plaintiffs. They do not complain of it, and such use is not affected by the judgment herein. And during said period from 1864 to 1886 all of said water continuously

flowed down to the land of plaintiffs, and was used by them to irrigate their land, and for domestic and general farming purposes. But in 1886 and 1887 the defendants diverted all the water of said West Fork of Dogtown Creek and carried it entirely beyond the said water-shed, so that it could not flow back to plaintiffs' land.

Now the defendants sought to connect themselves with the right of said old disbanded association of miners of 1860-62, and for this purpose offered the papers, which the court ruled out. The first was a money judgment in the district court in favor of one Shaw against the "United Water Ditch Company" for eleven thousand five hundred dollars. The next paper offered was a deed to said Shaw from a constable, purporting to have been made in pursuance of a sale upon an execution issued out of a justice's court on a money judgment in favor of one Phelps against the "United Water Ditch Company," nothing having been offered except the deed itself. The next was a deed from Shaw to a grantor of the defendants. The said judgment was rendered, and said two deeds were executed, in 1862 and 1863. The other papers offered were bills of sale dependent for their value upon said deed by Shaw.

There are some apparent objections to the evidence offered, even if it had been material. It is difficult, for instance, to see how a valid judgment could have been obtained against such a body as said "association of miners." But as their name was the "New Ditch Company," how could they, or their property, be affected by a judgment against the "United Water Ditch Company"? And how could a mere money judgment be evidence of title to real property? As to the constable's deed, there was no basis for its introduction. But if the offered evidence had been admitted, it would not have changed the aspect of the case at all. The court found that the old ditch and water right by which the water had for a short time been carried beyond the water-shed of Dogtown Creek had been abandoned for more than twenty years next preceding the time when, in 1886-87, the defend-

ants undertook to again carry it beyond said watershed; and that during most of that time plaintiffs not only had the right to it as riparian owners, but had also appropriated it to particular uses. If, therefore, the old "association of miners" could now be materialized and made a present legal entity, it could not maintain the right which appellants sought to assert under it. Decisions are cited to the proposition that a water right may be changed both as to the point of diversion and the place of use; but after it has been destroyed by abandonment there is nothing left to change. (See *Davis* v. *Gale*, 32 Cal. 27; 91 Am. Dec. 554.)

The order appealed from is affirmed.

DE HAVEN, J., and SHARPSTEIN, J. concurred.

Hearing in Bank denied.